*FOR PUBLICATION*

```
IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
          DIVISION OF ST. CROIX
           APPELLATE DIVISION
```

| | |
|---|---|
| JAMES CARLOCK, | ) D.C. CRIM. APP. NO. 2006/011 |
| Appellant, | ) Re: Sup.Ct.Crim. 426/2005 |
| v. | ) |
| PEOPLE OF THE VIRGIN ISLANDS, | ) |
| Appellee. | ) |

On Appeal from the Superior Court of the Virgin Islands

Considered: July 10, 2009
Filed: November 10, 2010

BEFORE: **CURTIS V. GÓMEZ**, Chief Judge, District Court of the Virgin Islands; **RAYMOND L. FINCH**, Judge of the District Court of the Virgin Islands; and **AUDREY L. THOMAS** Judge of the Superior Court of the Virgin Islands, sitting by designation.

ATTORNEYS:

**Eric Chancellor, Esq.**
St. Croix, U.S.V.I.
    Attorney for Appellant,

**Maureen Phelan, Esq., AAG**
St. Thomas, U.S.V.I.
    Attorney for Appellee.

**Per Curiam.**

| **Memorandum Opinion** | |
|---|---|

Appellant James Carlock ("Appellant" or "Carlock") was convicted of voluntary manslaughter and third degree assault in the Superior Court of the Virgin Islands. On appeal, he challenges his conviction alleging insufficiency of the evidence and improper jury instructions. For the reasons cited herein, we affirm.

## I. FACTUAL AND PROCEDURAL POSTURE

This case arises out of the death of Alan Reid ("Reid") on the evening of September 30, 2005. On that night, Carlock and Reid, who were both employed by a local oil refinery, went to Bongo's bar in Christiansted, St. Croix. During the course of the evening, while the men were drinking and socializing, Reid pinched Carlock's nipple. Later that night, Reid slapped Carlock on the buttocks.

Thereafter, William Decatur ("Decatur"), who was also at the bar, witnessed an argument between Carlock and Reid shortly after midnight. Accounts of the incident differ. According to Decatur, Carlock hit Reid twice in the face.[1] Reid fell to the ground and

---

[1] At the time of the incident, Carlock was twenty eight years old, six feet tall and approximately 220 pounds. (J.A. 164, 289-290.) Reid was fifty years old. (*Id.* at 290.)

struck his head on the pavement outside of the bar. While Reid lay immobile in the street, Carlock mounted Reid and struck him in the face and head ten to eleven times. Decatur claims that he and three other bystanders were eventually able to pull Carlock off of Reid, but not before Carlock kicked Reid in the shoulder and head. According to Decatur, Reid lay prone in the street, choking on his own blood.

Carlock claimed that Reid was the initial aggressor. He testified that Reid struck him in the head with a beer bottle. Carlock further averred that as he turned to confront Reid, Carlock only struck him two to three times before the two men fell to the ground on the pavement near the bar. Both Carlock and Decatur agree that Reid did not get up.

The first officer arrived on the scene at 1:10 a.m., approximately one hour after the fight. The ambulance arrived approximately half an hour later and treated Reid. While being transported to the hospital, Reid spoke to the ambulance driver and appeared alert. His vital signs were stable. However, en route to the hospital, he became agitated and had difficulty breathing. Reid died at the hospital at 4:24 a.m.

Carlock was charged in an amended information. Count I alleged that he committed voluntary manslaughter, in violation of V.I. Code Ann. tit. 14, § 924(1). Count II alleged that he

committed third degree assault, in violation of V.I. Code Ann. tit. 14, § 297(4). At trial, Decatur and Carlock testified. The treating emergency medical technician and the pathologist who examined Reid's body also testified to the extent of Reid's injuries and clinical cause of death.

Following the close of evidence, Carlock's counsel objected to the jury instruction regarding third degree assault. Carlock requested that the court instruct the jury that simple assault is a lesser included offense of third degree assault. Subsequently, the jury returned a guilty verdict on both counts of the amended information. Carlock was sentenced to a period of ten years on count I and five years on count II, as well as a $500.00 fine on count II.[2] This timely appeal followed.

## II. JURISDICTION AND STANDARD OF REVIEW

This court has jurisdiction to consider judgments and orders of the Superior Court in criminal cases. Revised Organic Act § 23A, 48 U.S.C. § 1613a.[3] We review de novo questions of law, issues implicating rights protected under the U.S. Constitution,

---

[2] The court ordered the sentences to run concurrently. (J.A. 3.)

[3] The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541- 1645 (1994), reprinted in V.I. Code Ann., Historical Documents, Organic Acts, and U.S. Constitution at 159-60 (1995 & Supp. 2003) (preceding V.I. Code Ann. tit. 1) ["Revised Organic Act"].

and the interpretation of statutes. *See Gov't of V.I. v. Albert*, 89 F.Supp.2d 658, 663 (D.V.I. App. Div. 2001). However, we afford the more deferential clear error review to factual determinations. *Id.*

III. **DISCUSSION**

A. **Sufficiency of the Evidence**

The standard of review for a sufficiency of the evidence claim is plenary. *U.S. v. Taftsiou*, 144 F.3d 287, 290 (3rd Cir. 1998). Our review of a sufficiency of the evidence challenge is guided by strict principles of deference to a jury's verdict. *U.S. v. Anderskow*, 88 F.3d 245, 251 (3d Cir. 1996). We must view the evidence in the light most favorable to the Government and sustain a jury's verdict if "a reasonable jury believing the Government's evidence could find beyond a reasonable doubt that the Government proved all the elements of the offenses." *United States v. Salmon*, 944 F.2d 1106, 1113 (3d Cir. 1991). Accordingly, "[a] claim of insufficiency of the evidence places a very heavy burden on the appellant." *U.S. v. Coyle*, 63 F.3d 1239, 1243 (3d Cir. 1995); *U.S. v. Rosario*, 118 F.3d 160, 163 (3d Cir. 1997).

Carlock's sufficiency of the evidence claim is twofold. He claims that the evidence was insufficient to prove his specific

intent for voluntary manslaughter and also insufficient to disprove his self-defense claim.

### 1. Whether the evidence adduced at trial was sufficient to prove Carlock's specific intent for voluntary manslaughter

Manslaughter is the unlawful killing of a human being without malice aforethought. There are two categories:

> (1) voluntary; upon a sudden quarrel or heat of passion; or
> (2) involuntary; in the commission of an unlawful act, not amounting to a felony; or in the culpable omission of some legal duty; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection.

*See* 14 V.I.C. § 924.

Voluntary manslaughter in the Virgin Islands requires that: (1) the defendant unlawfully killed another; (2) with malice aforethought; (3) upon a sudden quarrel or heat of passion; and (4) with either an intent to kill or an intention to inflict serious or grievous bodily injury that would likely cause or result in the victim's death. *Gov't of the Virgin Islands v. Knight*, 764 F. Supp. 1042, 1048 (D.V.I. 1991)(listing elements of voluntary manslaughter). A conviction for voluntary manslaughter requires a finding of specific intent, mitigated by heat of

passion, caused by severe provocation. *Id.* at 1048.[4]

Carlock argues that the evidence produced at trial was insufficient to prove that he formed the specific intent to kill or inflict such bodily injury upon Reid as likely to result in his death. At trial, the jury heard eyewitness testimony from Decatur that Carlock hit Reid in the face. Decatur also testified that Carlock struck Reid with such force that Reid's body gave way to the impact and he fell to the ground, struck his head on the pavement and lay immobile in the street. The jury also heard testimony that Carlock struck Reid ten to eleven times with his fists from the "collar bone up" while Reid lay on the ground. (J.A. 59.)

Additionally, Decatur testified that when he and three other bystanders pulled Carlock from Reid, Carlock persisted in attacking Reid by kicking him in the shoulder and head. Decatur also told the jury that when the bystanders attended to Reid, he was choking on his own blood. Based on this evidence alone, a reasonable juror could have inferred that Carlock formed the requisite specific intent to commit voluntary manslaughter. *See*

---

[4] By contrast, involuntary manslaughter is an unintentional killing during the commission of an unlawful act not amounting to a felony or during the negligent commission of a lawful act. *Knight*, 764 F. Supp. at 1048.

*Salmon*, 944 F.2d at 1113.

## 2. Whether the evidence adduced at trial was sufficient to disprove Carlock's self-defense claim beyond a reasonable doubt

### a. Self-defense

To place self-defense at issue, Carlock offered evidence that he reasonably believed that he was in imminent danger of death or serious bodily harm from which he could save himself only by using deadly force. *See Gov't of the Virgin Islands v. Isaac*, 50 F.3d 1175, 1179 (3d Cir. 1995)(citing V.I. Code. Ann. tit. 14, § 43)(holding that a defendant charged with voluntary manslaughter would be entitled to an acquittal on the ground of self-defense if he reasonably believed that he was in imminent danger of death or serious bodily harm from which he could save himself only by using deadly force).

Here, trial testimony revealed that Reid, unprovoked, pinched Carlock's nipple and slapped his buttocks. Carlock testified that he struck Reid to defend himself against Reid's advances. (J.A. 264-270.) Carlock also claimed that he believed that he was in imminent danger of serious bodily harm because he had heard that Reid was recently released from prison for stabbing someone. (*Id.* at 276, 288.) Carlock further testified that he attacked Reid with such intensity because he reasonably

feared that Reid would stab him.

Carlock properly raised self-defense. *Id.* at 1179 (holding that defendant "properly" raised self-defense, but passing on the applicable burden of proof for establishing self-defense in a voluntary manslaughter prosecution in the Virgin Islands); *see also Gov't of the Virgin Islands v. Smith*, 949 F.2d 677, 680-686 (3d Cir. 1991)(holding the defendant sufficiently raised a self-defense justification in a murder prosecution while thoroughly evaluating self-defense burden of proof jurisprudence, but declining to address applicable burden of proof for raising self-defense in the Virgin Islands).[5] The question, therefore, is whether the prosecution proved the absence of self-defense beyond a reasonable doubt. *Id.* ("Once self-defense is raised by a defendant, the prosecution bears the burden to prove its absence beyond a reasonable doubt.").

b. **Proving absence of self-defense**

Carlock argues that the prosecution failed to disprove his self-defense claim beyond a reasonable doubt because Decatur's testimony was contradicted.[6] Carlock claims that when Decatur

---

[5] Carlock did not challenge the trial court's self-defense jury instruction below, nor does he challenge it on appeal.

[6] Decatur testified that when he first saw Carlock outside of the bar, Carlock and Reid were engaged in a "minor confrontation" about ten to twenty feet away from him. (J.A. 54-

first talked to an investigating officer at the scene, Decatur told police that Reid was the initial aggressor when Reid hit Carlock on the head with a beer bottle. Carlock also avers that a police report that was not admitted into evidence recorded Decatur's conversation with police at the time of the incident.

At trial, however, Decatur testified that Carlock was the initial aggressor. When shown the police report for the first time under cross-examination, Decatur explained that the investigating "officer [who] wrote this was confused." The police report was not admitted into evidence and was not proffered as such.[7] Notably, the police officer who recorded the police report did not testify. At trial however, Decatur clearly testified that he did not tell the investigating officer that Reid was the initial aggressor.

Considering that the police report was not admitted into evidence, it remains questionable whether Decatur's testimony was indeed contradicted. Nonetheless, even if Decatur's testimony was

---

55.)

[7] Given the context in which the police report was used to cross-examine Decatur, we assume that it was used under the past recollection recorded exception. *See* Fed. R. Evid. 803(5). The police report was not admitted into evidence. We do note, however, that the prosecution did not object to the use of the police report and the trial court judge did not explicitly rule on the use of the police report during cross-examination.

contradicted, that does not mean there was insufficient evidence to convict Carlock. *See U.S. v. Jannotti*, 673 F.2d 578, 598 (3d Cir. 1982); *see also Isaac*, 50 F.3d at 1179("The fact that the testimony is contradictory does not mean the evidence is insufficient, only that the jury must make credibility determinations.").[8]

Hence, despite Carlock's characterization of Decatur's purportedly contradictory accounts, if the jury credited Decatur's testimony, it could have found beyond a reasonable doubt that Carlock acted excessively in repelling Reid's advances by striking him in the head with such force that he fell to the ground. *See Gov't of the Virgin Islands v. Robinson*, 29 F.3d 878 (3d Cir. 1994)("A person who is attacked may only use reasonable and necessary force, and may not inflict more harm than is

---

[8] "[Credibility] determinations are the sole province of the jury." *Gov't of the Virgin Islands v. Henry*, 232 Fed. Appx. 170, 174 (3d Cir. 2007); *see also U.S. v. Jannotti*, 673 F.2d 578, 598 (3d Cir. 1982) (en banc), *cert. denied*, 457 U.S. 1106 (1982) (holding that "[c]redibility determinations are for the jury"). The Third Circuit has held that the testimony of witnesses, standing alone, is sufficient to uphold a conviction. *See, e.g., United States v. Perez*, 280 F.3d 318, 344 (3d Cir. 2002) (holding that uncorroborated accomplice testimony may provide the exclusive basis for a criminal conviction); *Jacobs v. Redman*, 616 F.2d 1251, 1255 (3d Cir. 1980) (same); *see also United States v. O'Shea*, 426 F.3d 475, 481 (1st Cir. 2005) (finding testimony of police witness who testified that he saw the defendant, who was "a good distance" away, throw a gun sufficient to support jury's determination that defendant possessed a weapon).

necessary to defend himself."). Under these facts, the evidence was sufficient for a rational jury to find beyond a reasonable doubt that Carlock did not act in self-defense.

### B. Jury Instructions

At trial, Carlock requested an instruction that simple assault is a lesser included offense to third degree assault. The trial court denied Carlock's request. On appeal, Carlock challenges the decision as reversible error. We review the trial court's refusal to give a particular jury instruction for an abuse of discretion.[9] *United States v. Leahy*, 445 F.3d 634, 642 (3d Cir. 2006); *United States v. Johnson*, 292 Fed. Appx. 178, 179-180 (3d Cir. 2008); *Isaac*, 50 F.3d at 1180. The question is whether the jury instructions stated the proper legal standard, our review is plenary.[10] *Id.*

---

[9] The Third Circuit has held that appellate courts should "reverse 'a [trial] court's denial to charge a specific jury instruction only when the requested instruction was correct, not substantially covered by the instructions given, and was so consequential that the refusal to give the instruction was prejudicial to the defendant.'" *United States v. Leahy*, 445 F.3d 634, 651 (3d Cir. 2006) (quoting *United States v. Phillips*, 959 F.2d 1187, 1191 (3d Cir.1992)).

[10] As on all occasions when we consider jury instructions we consider the totality of the instructions and not a particular sentence or paragraph in isolation. *In Re Braen*, 900 F.2d 621, 626 (3d Cir. 1990); *United States v. Coyle*, 63 F.3d 1239, 1245 (3d Cir. 1995).

3. **Whether the trial court abused its discretion when it refused to instruct the jury that simple assault is a lesser offense to third degree assault**

It is well settled that jury instruction must contain a lesser-included offense if the evidence adduced at trial could support a guilty verdict on either charge.[11] *See Sansone v. United States*, 380 U.S. 343, 349-350 (1965)(citations omitted); *U.S. v. McGill*, 964 F.2d 222, 239 (3d Cir. 1992), cert. denied, 506 U.S. 1023 (1992); *Gov't of the Virgin Islands v. Knight*, 989 F.2d 619, 632 (3d Cir. 1993).

However, two threshold conditions are necessary to trigger the requirement of the lesser-included offense charge. First, based on the facts of the case, the lesser-included offense must be "included within but not . . . completely encompassed by the

---

[11] Although Carlock fails to cite applicable authority, the basis for this claim is Federal Rule of Criminal Procedure 31(c), which provides that a "defendant may be found guilty of an offence [sic] necessarily included in the offence [sic] charged or of an attempt to commit either the offence [sic] charged or an offence necessarily included therein if the attempt is an offence [sic]." Although the language of the Rule is permissive, it is well-settled that a "lesser-included offence [sic]" charge is a matter of right if the conditions set forth in the Rule are satisfied. *Gov't of the Virgin Islands v. Carmona*, 422 F.2d 95, 100 (3d Cir. 1970); *Sansone v. United States*, 380 U.S. 343, 349(1965).

greater [offense]." [12] *Sansone*, 380 U.S. at 350; *Gov't of Virgin Islands v. Carmona*, 422 F.2d 95, 100 (3d Cir. 1970); *Gov't of the Virgin Islands v. Sealey*, 1981 U.S. Dist. LEXIS 9356, at *5 (D.V.I. 1981). Second, there must be a genuine conflict of evidence as to an element not shared by the lesser offense. *Id.*; *Carmona*, 422 F.2d at 100.

### a. Simple assault as a lesser-included offense to third degree assault

Carlock was charged with third degree assault. Third degree assault occurs when a person ". . . under circumstances not amounting to an assault in the first or second degree, assaults another and inflicts serious bodily injury upon the person assaulted." 14 V.I.C. 297(4). Simple assault occurs when a person commits "an assault or battery unattended with

---

[12] A defendant is entitled to an instruction on a lesser included offense if the evidence would permit a rational jury rationally to find him guilty of the lesser offense and acquit him of the greater. *Keeble v. United States*, 412 U.S. 205, 208 (1973). Courts "may direct the entry of judgment for a lesser included offense when a conviction for a greater offense is reversed on grounds that affect only the greater offense." *Rutledge v. United States*, 517 U.S. 292 (1996)(citations omitted); accord Fed. R. Crim. P. 31(c); *see also Schmuck v. United States*, 489 U.S. 705, 716 (1989)(citations omitted) (adopting "elements approach" to resolving greater and lesser offense issues); *cf. U.S. v. Frorup*, 963 F.2d 41, 42 (3d Cir. 1992) ("This court will uphold a jury verdict convicting a defendant of a lesser offense than the one charged if 'the evidence would permit a jury rationally to find [the defendant] guilty of the lesser offense and acquit of the greater.'"); *U.S. v. Vazquez*, 271 F.3d 93, 105 (3d Cir. 2001).

circumstances of aggravation." 14 V.I.C. 299(2). Simple assault is escalated to third degree assault upon a finding of an additional aggravated element, namely, that the accused inflicted "serious bodily injury upon the person assaulted." *Id.; see also* 14 V.I.C. 297(4). Thus, the unambiguous language of the statute makes it impossible to commit the complete aggravated offense of third degree assault without first having committed the offense of simple assault.[13] *See, e.g., Cheatham v. Gov't of the Virgin Islands*, 1994 U.S. Dist. LEXIS 10248 (D.V.I. 1994). Hence, under Virgin Islands law, simple assault is a lesser included offense to third degree assault.

### b. Genuine conflict of evidence

We must also determine whether there was a sufficient

---

[13] "'To be necessarily included in the greater offense the lesser must be such that it is impossible to commit the greater without first having committed the lesser.'" *Giles v. United States*, 144 F. 2d 860, 861 (9th Cir. 1944) *quoting House v. State*, 117 N. E. 647, 648 (1917). This Court's decision in *Stevenson v. United States*, 162 U.S. 313 (1896), reflects the "practically universal" practice. *Id.* There, in holding that the defendant in a murder charge was entitled to a lesser included offense instruction on manslaughter under the statutory predecessor to Federal Rule of Criminal Procedure 31(c), the Court engaged in a careful comparison of the statutory elements of murder and manslaughter to determine whether the latter was a lesser-included offense of the former. *Id.* at 320. In short, the elements approach was settled doctrine at the time of the promulgation of the rule, and for more than two decades thereafter. *Keeble v. United States*, 412 U.S. at 208, n. 6. Rule 31(c) incorporated this established practice.

conflict of evidence to support the requested lesser-included simple assault instruction. *Carmona*, 422 F.2d at 100. At trial, the Government put on evidence that the injuries that caused Reid's death were consistent with a severe beating. The prosecution also presented eye-witness testimony that Carlock repeatedly struck Reid while he lay on the ground. Carlock countered that, although he attacked Reid in self-defense, his conduct was not the cause of Reid's severe injuries or death. Carlock hypothesized that Reid's death was attributed to improper medical attention. Carlock testified that he hit Reid only two or three times and that when he turned to confront Reid, the two men fell to the street.

It is patent that the parties presented conflicting evidence as to the cause of Reid's injuries and death. We are tasked, however, with determining whether the conflict of evidence adduced was "genuine." *See Carmona*, 422 F.2d at 100.

To prove that Carlock caused Reid's death, the prosecution presented medical evidence that Reid suffered: a bruise across a nine-inch by three-inch area that included the eye socket, cheeks and nose; multiple facial fractures; a skull fracture; brain swelling; and multiple abrasions and bruising on the backs of both hands and forearms, consistent with defensive wounds. (J.A. 18, 19, 21, 47.) Decatur, an eye-witness testified that he saw

the incident from its inception as a verbal argument to its physical escalation. Decatur also testified to his observations concerning Reid's subsequent injuries. The Government also presented the examining pathologist's testimony, as well as the testimony of the emergency medical technician who responded to the incident. Testimony from Carlock's co-worker, who was also present at the scene corroborated Decatur's testimony that Carlock hit Reid in the face several times once Reid was on the ground. (J.A. 11-48, 67-70, 91-115, 196-212.)

We recognize that due process requires that a court must give a requested instruction on a lesser included offense, <u>if</u> it is supported by the evidence. *See United States v. Johnson*, 292 Fed. Appx. 178, 181 (3d Cir. 2008)(emphasis added); *Vujosevic v. Rafferty*, 844 F.2d 1023, 1027 (3d Cir. 1988); *Hopper v. Evans*, 456 U.S. 605, 611 (1982); *Bishop v. Mazurkiewicz*, 634 F.2d 724 (3d Cir. 1980). This requirement is based on the risk that a defendant might otherwise be convicted of a crime more serious than that which the jury believes he committed simply because the jury wishes to avoid setting him free. *See Keeble v. United States*, 412 U.S. 205, 212-213 (1973)(citations omitted).

However, due process does not require a jury instruction unless the proposed instruction has rational support in the evidence, *Keeble*, 412 U.S. at 208, nor does the Constitution

require a jury instruction on a lesser-included offense where the evidence does not support it. *Id.* at 214; *see also Sansone*, 380 U.S. at 343. Accordingly, in *Hallowell v. Keve*, 555 F.2d 103 (3d Cir. 1977), the Third Circuit held that a Delaware court was correct in refusing to charge the jury on involuntary manslaughter where it was unsupported by the evidence. *Id.*; *see also Bishop v. Mazurkiewicz*, 634 F.2d 724, 725 (3d Cir. 1980).

Here, Decatur testified that Carlock was the initial aggressor. Medical evidence indicated that Reid suffered a cerebral hematoma, skull fractures and several defensive wounds. The pathologist testified that the cause of Reid's death was consistent with injuries sustained as the result of a fist fight and a fall. (J.A. 41.) Carlock himself admitted to striking Reid before Reid fell to the ground and lay bleeding on the street. (*Id.* at 315-316.) Carlock also admitted to jumping on top of Reid while he was on the ground. It is uncontroverted that Reid died after the attack. Yet Carlock posits that there was sufficient evidence to support a simple assault instruction.

In support of his position, Carlock argues that a reasonable jury could have believed that Reid's head hitting the pavement, as opposed to Carlock's flurry of punches to Reid's head, was the direct and actual cause of Reid's injuries and death. (Appellant's Br. 13.) However, "a person is presumed to have intended the

natural consequences of his acts." *U.S. v. Newman*, 490 F.2d 139, 148 (3d Cir. 1974). Reid did not simply fall to the ground. He fell only because he was the victim of an assault. The only intervening force was gravity.[14] Thus, even if the injuries suffered by Reid as a result of his fall were the immediate cause of his death, the fall itself was nonetheless directly and actually caused by the blows administered by Carlock.

Carlock's alternative argument is that Reid died due to inadequate medical treatment. However, at trial, the prosecution provided evidentiary support that the beating administered by Carlock resulted in blunt trauma cranial injuries and was the direct cause of Reid's death. *See Meshell v. State*, 506 So.2d 989, 993 (Miss. 1987) (upholding conviction where blows administered by defendant caused victim to strike his head on the concrete, even though the victim's family had him discharged from the hospital against medical advice).

Given the evidence adduced, we find that the evidence neither supported a simple assault instruction nor raised a genuine conflict as to the cause of Reid's death. Accordingly, under the

---

[14] *Scaggs v. State*, 278 Ga. 19, 20 (Ga. 2004)(Affirming a defendant's conviction for aggravated assault under similar facts.)

deferential abuse of discretion standard, we cannot conclude that the trial court abused its discretion when it determined that the evidence did not support a simple assault and battery instruction.

## IV. CONCLUSION

For the reasons cited above, we **AFFIRM** the Appellant's conviction for voluntary manslaughter and third degree assault.